FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JUN -9 PM 3: 38

U.S. DISTRICT COURT
N.D. OF ALABAMA

EDWIN J. GALLER, M.D., )
P.C., )
 )
    Plaintiff, )
 )
 )    CIVIL ACTION NO.
v. )
 )    CV-97-AR-0725-S
BAPTIST HEALTH SYSTEM, )
INC., f/k/a THE BAPTIST )
MEDICAL CENTERS, )
 )
    Defendant. )

**ENTERED**

JUN 9 1997

**MEMORANDUM OPINION**

The court has before it a motion for summary judgment filed by defendant, Baptist Health System, Inc., f/k/a The Baptist Medical Centers ("BHS"). For the reasons set forth below, defendant's motion is due to be granted.

**A. Pertinent Facts**

Defendant, an Alabama corporation, and plaintiff, a Georgia corporation that has never registered to do business in Alabama, (Defendant's Motion for Summary Judgment, Exhibits "1" and "2"), entered into a purported contract for plaintiff's professional services on April 19, 1993. (Plaintiff's Response to Motion to Dismiss, Exhibit "B"). The contract required that plaintiff

1

12

provide medical record and chart review to eight of defendant's hospitals located in Alabama. *Id*. at ¶ 1.A. Plaintiff provides such services to other customers in eight foreign states. In order to effectuate a proper review, plaintiff traveled from Atlanta, Georgia, where its primary office is located, to the several Alabama hospital locations. Plaintiff did so on numerous occasions, approximately twice a week, for the contract period. While at defendant's hospital, plaintiff would gather relevant information and review reports made by defendant's employees. Plaintiff would then return to Georgia to further analyze the reports and make recommendations. Plaintiff's reports were then sent, via mail, from Georgia to Alabama. Plaintiff and defendant further conducted relevant business by telephone between Georgia and Alabama.

Plaintiff provided such services until defendant unilaterally terminated the contract by letter dated August 19, 1996. (Plaintiff's Response to Motion to Dismiss, Exhibit "C"). The contract provides that either party may terminate the contract at any time by giving ninety days written notice. (Plaintiff's Response to Motion to Dismiss, Exhibit "B", ¶ 3.B.). Plaintiff brought the present action alleging that the BHS failed to pay plaintiff monies owed him for services rendered during the contract

2

period and for a ninety day notice period after the termination letter was issued.

### B. Summary Judgment Standard

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

### C. Legal Analysis

Defendant's summary judgment motion does not address the merits of plaintiff's complaint. Rather, it contends that plaintiff's contract with defendant, by virtue of plaintiff's failure to register as a corporation in Alabama, is void pursuant to Alabama statutory and constitutional law, and that any claims for breach of contract by plaintiff can not be enforced by Alabama courts or federal courts applying Alabama law.

Article XII, § 232 of the Constitution of Alabama 1901, reads

in pertinent part:

> No foreign corporation shall do business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association.

Alabama Code § 10-2A-247(a), repealed by Acts 1994, No. 94-245, p. 457, § 3 reads:

> All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held <u>void</u> at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement . . . .

(emphasis added). Alabama Code § 10-2A-247(a) has been repealed, yet it still controls all "contracts" entered into before January 1, 1995. *See Phenix City-Cobb Hospital Authority Inc. v. Sun Pointe Property, Inc.*, 689 So. 2d 797, 798 (Ala. 1997); *Vines v. Romar Beach, Inc.*, 670 So. 2d 901, 902 (Ala. 1995). It is undisputed that plaintiff has failed to file a certified copy of its articles of incorporation with Alabama and it is undisputed that plaintiff has no certificate of authority to transact business in Alabama. Furthermore, it is undisputed that the contract was entered into on April 19, 1993, prior to the repeal of the relevant statute.

The Eleventh Circuit has created a two-tiered analysis for courts to apply in determining whether the Alabama forum-closing statute avoids the so-called "dormant commerce clause" problem and constitutionally bars a foreign corporation from enforcing its Alabama contracts. *See S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1509-10 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026, 111 S. Ct. 677 (1991).

> First, [the court must] determine whether the Alabama courts, applying the statute, would refuse the foreign corporation's request to enforce the contract. *See Aim Leasing Corp. v. Helicopter Medical Evacuation, Inc.*, 687 F.2d 354, 357 (11th Cir. 1982). If [the court] conclude[s] that Alabama courts would close their doors to the foreign corporation, then [it] must examine the burden such a closing would place on interstate commerce: [the court] will not enforce the forum-closing statute if its enforcement in a particular case would unduly burden interstate commerce in violation of the federal commerce clause. *Id.*

*S&H Contractors*, 906 F.2d at 1509-10.

In a case such as this one, Alabama courts look to whether the foreign corporation was qualified by the secretary of state to do business in Alabama and to whether the foreign corporation was conducting <u>intrastate</u> business. *Id.* at 1510 (citing *Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.*, 548 So. 2d 1336, 1337 (Ala. 1989)). Plaintiff clearly was never qualified by the secretary of state to do business in Alabama. The intrastate

5

nature of plaintiff's activities is less clear. However, the undisputed facts surrounding the present contract compel this court to find that the contract was primarily intrastate in nature, and that the interstate elements of the contract were merely incidental to the intrastate aspects. Plaintiff's business, namely providing service consultation, would be considered intrastate in nature by Alabama courts. Alabama courts often give service and labor contracts an intrastate label. *See Id.* at 1510-11; *Phenix City-Cobb Hospital Authority*, 689 So. 2d at 798; *Building Maintenance Personnel, Inc. v. International Shipbuilding, Inc.*, 621 So. 2d 1303, 1305 (Ala. 1993); *Wise v. Grumman Credit Corp.*, 603 So. 2d 952, 953 (Ala. 1992). However, this determination is fact intensive and necessarily requires an ad hoc, case by case, resolution. *See S&H Contractors*, 906 F.2d at 1511.

In this case, the consulting services were performed both in Georgia and Alabama. The evidence suggests that plaintiff's forays into Alabama were largely fact finding in nature, nevertheless these services constituted the core of the contract. While the facts and data collected in Alabama were processed in Georgia and later shipped to Alabama, the primary purpose of the contract was to provide services and consultation solely within Alabama. The

6

plaintiff's contacts in Alabama were significant in both time actually spent in state and in the importance of those contacts.

It is settled that where an intrastate activity is merely incidental to interstate commerce, Alabama courts will not apply the forum-closing statute. *See Stewart Machine and Engineering Co., Inc. v. Checker's Drive In Restaurants of North America, Inc.*, 575 So. 2d 1072, 1074-75 (Ala. 1991) (citing *Wallace Construction Co. v. Industrial Boiler Co.*, 470 So. 2d 1151 (Ala. 1985)). However, this court is convinced that where interstate and intrastate aspects exist in a contract, the court must look at both activities and determine whether they are severable, and if not, "whether the main or primary purpose of the contract constitutes an interstate or intrastate activity." *The Competitive Edge, Inc. v. Tony Moore, Buick-GMC, Inc.*, 490 So. 2d 1242, 1245-46 (Ala. Civ. App. 1986). In this case, the intrastate activity predominates.

The court agrees with defendant that the Alabama case most closely on point is *Competitive Edge*, *see supra*. In that case, a foreign corporation contracted with an Alabama corporation to produce a commercial to be marketed solely in Alabama. The commercial was produced primarily in the foreign jurisdiction and later shipped to Alabama for distribution. Based on this, the

7

Alabama court of civil appeals found that "the primary purpose of the contract . . . was the service which was agreed to be rendered under it, i.e. the broadcasting of automobile advertisements in the local area." *Competitive Edge*, 490 So. 2d at 1246. Accordingly, that court held that the interstate part of the contract was incidental and that the contract was intrastate in nature. Similarly, the primary purpose of contract here was the service rendered by plaintiff which was to be utilized wholly within the state of Alabama. Based on the foregoing, this court finds that the Alabama courts would determine that the contract was intrastate in nature and would therefore close their doors to plaintiff.

The court must now address the Eleventh's Circuit's second prong. While the inquiry into the constitutionality of the forum-closing statute as applied to the specific facts is substantially the same as the intrastate/interstate inquiry made pursuant to the first prong, it is nevertheless distinct and must be addressed separately. *S&H Contractors*, 906 F.2d at 1511. The primary distinction is the type of law employed to answer the dormant commerce clause question. The constitutionality of the statute as applied is a question answered solely with reference to federal constitutional law. *Id.* Two inquiries are important in this

8

regard. First, the court should "focus on the permanence and scope of the relationships between the foreign corporation and the forum state." *Id.* at 1511 (citing cases). Second, the court should address "whether the intrastate transaction is an essential element of an interstate transaction." *Id.* (citing cases). As mentioned above, the facts show that the scope of plaintiff's and defendant's relationship was substantial and lasted for a number of years. The relationship was tied directly to an intrastate activity, namely plaintiff's frequent and continuing consultations in Alabama. Plaintiff essentially "localized" its business in Alabama. Accordingly, its activities will be considered intrastate activities for the purposes of the constitutional analysis, not interstate. In accordance with the Eleventh Circuit's rationale in *S&H Contractors*, this court finds that plaintiff's business was localized in Alabama and that intestate commerce is not unduly burdened in the present case by enforcing Alabama's forum-closing statute. *But see Radio WHKW, Inc. v. Yarber*, 838 F.2d 1439 (5th Cir. 1988). For these reasons, defendant's motion for summary judgment is due to be granted. This court's conclusion, if correct, may provide a reason, not heretofore understood, not to form a single person professional corporation.

9

A separate and appropriate order will be entered.

DONE this 9th day of June, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT